**RIGHT TO LIFE PARTY, Jane I. Gilroy and Marcia E. Pilsner, Plaintiffs,**

**v.**

**Nelson A. ROCKEFELLER, Governor of the State of New York, John P. Lomenzo, Secretary of State of the State of New York, Louis J. Lefkowitz, Attorney General of the State of New York, and Morris Zuckman, Defendants.**

**No. 70 Civ. 4532.**

United States District Court,
S. D. New York.
Oct. 27, 1970.

Eugene J. McMahon, Richmond Hill, N. Y., for plaintiffs.

Louis J. Lefkowitz, Atty. Gen. of the State of New York, for defendant Attorney General, by Mark T. Walsh, Asst. Atty. Gen., New York City.

MANSFIELD, District Judge.

In this action based on 42 U.S.C. § 1983 and 28 U.S.C. §§ 1331 and 1343(3) the Right to Life Party and its intended candidates for Governor and Lieutenant Governor of New York State seek to reverse the decision of the New York Secretary of State excluding them from the ballot in the November elections. For reasons set forth below, we hold that plaintiffs have failed to state a claim on which relief can be granted, and the action is therefore dismissed.

The Right to Life Party (hereinafter referred to as "the Party") is an "independent body" as that term is used in § 2(4) and (11) of the N.Y. Election Law, McKinney's Consol.Laws, c. 17, since its candidate for governor at the last preceding election polled less than 50,000 votes. As such, it was required to submit nominating petitions pursuant to N.Y. Election Law § 138 in order to obtain a place on the statewide ballot. The Party accordingly selected a symbol, printed nominating petitions following

the form suggested in § 138(2) and (3), and on August 21, 1970, filed with the Secretary of State a nominating petition containing 14,062 signatures. The petition named the individual plaintiffs in this action as candidates for the Governor and Lieutenant Governor. Thereafter, numerous objections were filed by a citizen objector, a hearing was held by the Secretary of State, and 3,012 signatures were ruled invalid. The number of valid signatures which remained, 11,050, did not satisfy the requirement of § 138(5) that 12,000 valid signatures be filed, and consequently the petition was deemed "null and void" by the Secretary of State.

The Party asserts that over 2,200 otherwise valid signatures were rejected pursuant to a provision in § 138(6) which was invalidated by a decision handed down on June 18, 1970, by a statutory three-judge court in this district in Socialist Workers Party, et al. v. Rockefeller, et al., D.C., 314 F.Supp. 984, and Socialist Labor Party, et al. v. Rockefeller, et al., D.C., 314 F.Supp. 984, consolidated cases hereinafter referred to as Socialist Workers Party. That case involved a broadside attack on New York election law procedures and requirements pertaining to "independent bodies" as placing an unconstitutionally heavy burden on the right of such bodies to petition for places on the statewide ballot. In the only portion of its opinion of relevance here, the three-judge court considered the constitutionality of that part of § 138(6) which provides that

> "the name of a person signing such a petition for an election for which voters are required to be registered shall not be counted if such person was not registered at the time of the last preceding general election as a qualified voter."

The court held that the foregoing provision denied new parties Equal Protection in that persons who had registered subsequent to the last such election were permitted to vote in the primary elections of the major parties but were prevented from signing the nominating petitions of independent bodies. An order was subsequently settled in part adjudging § 138(6) unconstitutional in the above respect and enjoining the State from enforcing the unconstitutional portion of the section. On July 11, 1970, a stay of the order was issued by Mr. Justice Harlan, and on July 22, 1970, he denied a motion to vacate the stay, relying in part on a telegram from the New York Attorney General which stated in part that "appellees will be placed on the ballot provided they have complied with election law as modified by District Court decree." On October 2, 1970, the Attorney General notified the Supreme Court by letter that three appellee parties in Socialist Workers had, on September 25, 1970, been placed on the ballot for the November elections. On October 12, 1970, the Supreme Court in a memorandum order affirmed the lower court judgment and vacated the stay, three Justices dissenting.

Plaintiffs in the present case claim that their nominating petition must be accepted as sufficient under the Socialist Workers Party case. The Party claims that it is suffering from an unequal application of the law in that the "last preceding general election" registration requirement, thus invalidated and not applied in Socialist Workers Party, was nonetheless applied to its petitions. (McMahon Aff. p. 14). We disagree.

In the first place the figure of 2,200 signatures alleged to have been rejected pursuant to § 138(6) does not appear to have been reached by canvassing all of the disqualified signatures; it seems to be an estimate based on a review of disqualified signatures in one (1) of the 13 volumes submitted to the Secretary of State. In that volume 170 disqualifications were allegedly based on failure to meet the "last preceding general election" requirement of § 138(6). However, it is not disputed that a very sub-

stantial number of the 3,012 signatures ruled invalid were rejected on other grounds, such as failure to furnish the signer's election district, giving an incorrect election district or incorrect residence, absence of any registration for the signer in the district given, etc.

With respect to the 2,200 signatures allegedly invalidated pursuant to § 138(6), each signer affirmatively represented in the petition that "I am a duly qualified voter of the political unit for which a nomination for public office is hereby made, that I was registered to vote within such political unit at the time of the last preceding general election * * *". For purposes of this action plaintiffs assume that the first part of this quoted statement was accurate and the last part was incorrect. However, plaintiffs have not furnished us with evidence to the effect that the signers, although not registered at the last preceding general election, registered thereafter before they signed the petition. The Party further contends that since its signatories signed a form recommended by N.Y. Election Law § 138(2), which contained questions rendered unnecessary by *Socialist Workers,* incorrect answers to those questions should not invalidate the entire petition which would have been valid if signed by voters who had registered subsequent to the last election.

Under the circumstances we must conclude that the burden of proving such registration subsequent to the last preceding election rests upon the Party, notwithstanding the fact that it solicited signatures on a form which was recommended by the State. The three-judge court decision in *Socialist Workers* was rendered on June 18, 1970, a good two months before the official deadline for filing nominating petitions with the Secretary of State (August 21, 1970), which was also the date on or about which the Party's petition was filed (McMahon Aff., pp. 5, 12), and indeed before the first date on which the Party could have solicited valid signatures. N.Y. Election Law § 138(7). Although *Socialist Workers* was being appealed, the Party was on notice that questions relating to registration at the time of the last preceding election need not be asked, and it could easily have amended its forms to comply with the less onerous requirements remaining after *Socialist Workers.*[1] Had such an amended form been used, either in complete substitution for or as a supplement to the State's form, after the *Socialist Workers* decision, the clerical burden of verifying the accuracy of statements as to recent registration would have fallen upon the State. Cf. *Socialist Workers,* at 8. Even if the contention that some of the signatures were those of persons registered since the last election had been raised at any earlier point in this dispute,[2] we might have required the

---

1. The individual plaintiffs in *Socialist Workers* included several persons who had registered since the prior election (McMahon Aff., pp. 11–12). Moreover, the campaign manager for the Socialist Workers Party explicitly instructed campaign workers to solicit signatures from others who had not been registered at the time of the last preceding election (McMahon Aff., pp. 11–12). Thus *Socialist Workers* showed much more clearly than the present case that the persons signing had not been registered in the past year but had subsequently registered. Plaintiffs' papers in this case demonstrate the thoroughness with which the Socialist Workers Party challenge to § 138(6) was

planned (McMahon Aff., pp. 11–12). Thus the Socialist Workers Party petitions stated accurately that the signatory, while he may not have been registered at the time of the last preceding election, had registered subsequently.

2. "Throughout this proceeding no claim was made, no proof offered, and no proof adduced, that any qualifying voter registered since the previous general election was denied the right to sign any of the petitions herein involved." Memorandum of Law on Behalf of the Defendant Attorney General of the State of New York, p. 8. In addition, we note that the Appellate Division, Third Department, dis-

State to investigate the matter. However, we are now at a point scarcely a week before the election when it is virtually impossible to conduct an investigation across the State as to the registration of the 3,012 invalidated signatories. The Party may not at this late date come forward with such a contention as to which no proof is now available and expect the State, or this court, to draw the highly speculative inference that all or a substantial proportion of those misrepresenting their registration at the last preceding general election had subsequently registered.

 We also reject the Party's contention that part of its form, in which the signer states that he is a "duly qualified voter," is sufficient indication that the signer had registered subsequent to the last preceding election. To be a qualified voter is only to be eligible to register; it is not the same as being registered. N.Y. Election Law § 150. *Socialist Workers* did not change the requirement that the signers of a nominating petition be registered voters when they sign.

We must also reject plaintiffs' contention that the Board's invalidation of a substantial portion of the 3,012 signatures because of other inaccuracies or misstatements (e. g., wrong election districts, non-existent or erroneous addresses, etc.) violated their constitutional rights. The State's action in requiring accurate information with respect to such matters seems reasonable enough, and there is no indication that the application of such standards is unequal or results in discrimination between petitioners or political parties. Nor does *Socialist Workers* afford any support for this contention. The *Socialist Workers* petitions were apparently considered by the Secretary of State in accordance with the mandate of the election law as modified by the decision of the three-judge court, and there is no evidence

that they were accepted without the same thorough inspection that is customarily made of such nominating petitions. Indeed, the petition of the Socialist Workers Party contained 20,300 signatures (McMahon Aff., p. 12, citing motion to affirm in *Socialist Workers*, p. 9, n. 9), and it seems likely that the 12,000-signature requirement was satisfied despite the invalidation of many of these signatures for reasons which remained permissible after the three-judge court decree.

█ █ The Party raises in addition a number of complaints as to the severity with which its petitions were read and the allegedly petty reasons for which signatures were disqualified. The State has a valid interest in insuring the authenticity of nominating petitions, and there is no evidence here of any arbitrary or capricious application of more severe standards to the Party than to other independent bodies. Therefore, no constitutional issues are presented.

The motion is dismissed.

It is so ordered.

missed a related challenge by the Right to Life Party on the ground that there was no evidence that any of the disqualifica-

tions were based on the now invalidated portion of § 138(6).